# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| GLORIA BORGSMILLER, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No: 10-cv-481-TLW |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Gloria Borgsmiller seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 7]. Any appeal of this Opinion and Order will be directly to the Tenth Circuit.

### Procedural History and Standard of Review

On September 13, 2006, plaintiff filed an application for supplemental security income benefits alleging disability due to chronic back pain. [R. 11]. After being denied benefits, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on March 17, 2007. The ALJ conducted a hearing on July 23, 2008. On August 20, 2008, the ALJ issued her decision, denying benefits. Following the decision, the Appeals Council denied plaintiff's request for review on May 26, 2010. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481. On July 7, 2010, plaintiff timely filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports the decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant adjudicated period. 20 C.F.R. § 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C. § 423 (d)(3); 20 C.F.R. § 416.913.

### Issues on Appeal

Plaintiff asserts that the ALJ made the following two errors:

(1) The ALJ's finding that plaintiff's disabling periods do no occur often enough to prevent her from performing SGA was not supported by the relevant evidence.

(2) The ALJ failed to perform a proper step four analysis.

[Dkt. # 14 at 2].

## **Background**

Plaintiff was born on May 27, 1954, and was fifty-four at the time of her hearing before the ALJ. [R. 23]. She has completed high school. Id. The record includes work history back to 1993, wherein plaintiff worked as an apartment manager for Dixon Real Estate. [R. 24]. After that job, plaintiff worked as a service office manager at Air Temperature Controllers, and then at Sooner Heating and Air in the same capacity. [R. 25, 26]. She worked at Sooner Heating and Air until November of 2001 when she was fired during a three month stint of being bedridden due to back pain. [R. 36]. That company subsequently went out of business. Id. She is married with two children and lives with her husband, daughter, and granddaughter. [R. 98].

Plaintiff has had back issues for some time and had surgery (laminectomy) in 1999 to repair one of two ruptured discs in the lumbar region of her spine. [R. 216]. For any additional surgical treatment plaintiff was told she would require an MRI, which she states she cannot afford. [R. 28, 35]. Plaintiff's treating physician is Timothy Sanford, D.O., who has prescribed plaintiff medications for pain, muscle spasms, blood pressure, and arthritis. [R. 217]. However, plaintiff admits that she is not very good at taking her medications for fear of future liver issues. [R. 38]. When she does take her medication she takes it spread out across the day, and is self-conscious of the mental side effects. Id. Plaintiff alleges that her back pain occasionally flares up limiting her mobility completely, leaving her bedridden from anywhere between a few weeks to a couple months. [R. 156]. When she is not bedridden, plaintiff is able to move around with a cane or walker and is able to perform some household chores. [R. 32]. Plaintiff alleges that her

back flares occur frequently, but over time have occurred less often. [R. 37] ("it seems like it's lessened up.").

### The ALJ's Decision

The ALJ found that plaintiff had not engaged in any substantial gainful activity since November 30, 2001. [R. 13]. The ALJ later found at step four of the five-step sequential evaluation process[1] that plaintiff could perform her past relevant work as a service office manager, and she had the residual functional capacity (RFC) to perform sedentary work as defined by 20 C.F.R. § 416.967(a) with certain limitations. [R. 16]. Further, the ALJ noted that:

> I give great weight to Dr. Sanford's opinion that the claimant is disabled during her flares. However, I believe the flares do not occur often enough to prevent her from engaging in substantial gainful activity.

Id.[2] Based on the testimony of the vocational expert, the ALJ found that plaintiff could find employment as a secretary or a scheduler. Id.

### Discussion

Plaintiff first argues that the ALJ erred by finding that plaintiff's "flares" do not occur often enough to prevent her from performing substantial gainful activity. More specifically, plaintiff argues that because the record is unclear as to the frequency and length of her flares, the ALJ should have "recontacted Dr. Sanford for clarification on the issue of the frequency of flares, given the uncertainty."

---

[1] The five-step sequential process provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

[2] Dr. Sanford is plaintiff's treating physician.

Plaintiff has identified four instances in the record where Dr. Sanford "report[s]" flares. Id. Initially, use of the term "report" exaggerates what Dr. Sanford did. Dr. Sanford merely recorded plaintiff's statement when she told him that she had experienced a "flare." The Court could find no instance in the record where Dr. Sanford actually diagnosed a "flare" or examined plaintiff when a "flare" was occurring. Thus, there is no objective medical evidence regarding the flares at all. Rather, the record only contains plaintiff's own statements (or the statements of others repeating plaintiff's statements) regarding the flares and their impact on her ability to function. Nonetheless, the ALJ accepted the occurrence of the flares and their alleged debilitating impact on plaintiff but, as plaintiff notes, chose not to specifically reference them in her hypothetical questions to the vocational expert for the reason that the flares did not occur frequently enough to prevent substantial gainful activity. It is this issue that the Court first addresses.

Plaintiff testified at the July 23, 2008 hearing that with respect to the frequency of her flares: "[i]t seems in the beginning that it was just – that it was a lot. And it seems like it's lessened up. Like I said, I feel like over the last couple of years that if I just stay home – well, like I said, it was February was the last one." Further, in plaintiff's brief, she admits that "the record is, admittedly, somewhat unclear as to the number of [her] flares." [Dkt. # 14 at 3]. The four "reports" plaintiff references were in September, 2006, then six months later in March, 2007, then six months later in September, 2007, then five months later in March, 2008. There is also a report in May, 2006. The May, 2006 report notes that plaintiff "has flares of pain at times and with flares she is bedbound for up to 3 months at a time." [R. 162]. The May, 2006 report notes that plaintiff's gait is "slowed and stiff." The report does not note any current disabling pain. The September, 2006 report states that "when she has severe flares she hurts for 3-8 weeks

and will be bed-bound for weeks at a time." [R. 156]. The September, 2006 report also states that plaintiff "has low back pain; this prevents her from functioning without pain meds." [R. 156]. The March, 2007 report notes that plaintiff's flares "can last 6 or more weeks." [R. 215]. The same report notes that plaintiff "had a flare of her pain and was bedbound for a little over a week recently . . . [and] [e]ven at times that she is not having a flare she has chronic low back pain." [R. 232]. The September, 2007 report notes that plaintiff "has chronic back pain issues; she has had one severe flare since I last saw her, but she continues to have chronic pain issues and never is without pain. . . . Positive for back pain and joint stiffness." [R. 212]. The March, 2008 report notes that plaintiff's flares leave her "bedbound for 2+ weeks at a time." [R. 223].

To summarize, in May, 2006, plaintiff reported flares lasting for up to 3 months at a time. In September, 2007, she reported flares lasting from 3-8 weeks. In March, 2007, she reported that the flares "can last 6 or more weeks." In September, 2007, there is no indication as to the length of the flares, but in March, 2008, plaintiff reported her flares as lasting for "2+ weeks at a time." In addition, there was no report of a flare between the March, 2008 report and the July, 2008 hearing. Certainly, the reports provide substantial evidence (even if not conclusive) that the length of plaintiff's flares are shortening. In addition, plaintiff's testimony provides similar evidence that the frequency is lessening. Likely, this is the reason plaintiff wants to recontact Dr. Sanford. The Court sees no need to do so. Although the ALJ has a duty to investigate, when a plaintiff is represented by counsel at the hearing, the ALJ should be entitled to rely on counsel to structure and present the case in a way that adequately explores the plaintiff's assertions. Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004). The ALJ's duty to develop the record does not require the ALJ to act as the claimant's advocate. As defendant points out, plaintiff's counsel agreed that the record was complete and at no time requested that the ALJ

6

recontact Dr. Sanford. [R. 22]. In addition, because Dr. Sanford's records, as they relate to plaintiff's flares, contain only a recitation of plaintiff's own statements, seeking additional evidence from Dr. Sanford would be fruitless. For those reasons, the Court rejects plaintiff's argument and finds no error in the ALJ's determination that plaintiff's flares were occurring less frequently and that they were lasting for shorter periods of time.

Plaintiff also argues that the ALJ erred when she concluded that Dr. Sanford's statements about plaintiff's flares imply that plaintiff is not disabled when she is not experiencing a flare. [Dkt. # 14 at 4]. In his March, 2007 report, Dr. Sanford states, "Because of her intermittent flares of extreme pain and debility she has not been able to have a job due to being bedbound when she has flares of pain." [R. 215]. This statement expressly attributes her inability to work to the "extreme pain and debility" that accompany "her intermittent flares." Similarly, in his September, 2007 report, Dr. Sanford writes, "In my opinion this patient is unable to work due to periods of exacerbation of back pain which make her bedbound for extended periods of time." [R. 158]. This statement is obviously in reference to Dr. Sanford's notation earlier in the report regarding plaintiff's "flares." Moreover, the statement concludes that plaintiff is unable to work "due to" her flares. If plaintiff's inability to work is "due to" her flares, then in the absence of a flare, plaintiff, by implication, would be able to work. The March, 2008 report does not include a statement by Dr. Sanford regarding plaintiff's ability to work. Whether or not the Court would have reached the same conclusions, the ALJ's statement that Dr. Sanford "implied" that plaintiff is not disabled between her flares is supported by substantial evidence.

Plaintiff next argues that the ALJ erred by relying on plaintiff's admission that she performs various daily activities as a basis for a finding that plaintiff lacked credibility. [Dkt. # 14 at 5]. As one of many reasons for discounting plaintiff's credibility, the ALJ stated that

7

plaintiff "remains able to do chores, wash dishes, and prepare meals." [Dkt. # 14 at 5]. Plaintiff argues that the ALJ improperly relied on these facts. The cases cited by plaintiff do not, however, support this conclusion. Rather, these cases find only that an ALJ should not rely <u>solely</u> on daily activities when those activities do not involve "prolonged physical activity." See <u>Broadbent v. Harris</u>, 698 F. 2d 407, 413 (10th Cir. 1983). Here, the ALJ did not rely solely on plaintiff's statements regarding her daily activities.

Finally, plaintiff asserts a variant of her first argument, that the ALJ erred by not including her flares in the hypotheticals given to the vocational expert, no matter how frequently they occurred. [Dkt. # 14 at 6]. Plaintiff's argument has two flaws. First, the ALJ expressly considered plaintiff's flares in the section of her decision that explained her RFC finding. [R. 14-16]. Second, immediately after posing several hypotheticals to the vocational expert, the ALJ asked plaintiff's counsel whether she wanted to ask "anything else" before closing the hearing. Plaintiff's counsel said, "Nothing further, Your Honor." As noted above, "the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." <u>Maes v. Astrue</u>, 522 F.3d 1093, 1096 (10th Cir. 2008). Plaintiff's counsel made no objection whatsoever to the ALJ's hypotheticals much less request that another hypothetical be given that specifically included a reference to plaintiff's flares. Therefore, plaintiff's counsel did not identify the issue asserted as error as one needing further development at the hearing, even though the lack of further development is the very argument on which plaintiff relies.

## **Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 30st day of September, 2011.

T. Lane Wilson
United States Magistrate Judge